522 P.2d 570

**Paul SYROID, Individually and as next friend of Paula Marie Syroid, a minor, Plaintiff-Appellant,**

v.

**ALBUQUERQUE GRAVEL PRODUCTS CO. and Home Planning Development Company, Inc., corporations, Defendants-Appellees.**

**No. 9728.**

Supreme Court of New Mexico.

May 10, 1974.

———◆———

Rodey, Dickason, Sloan, Akin & Robb, James C. Ritchie, Bruce D. Hall, Albuquerque, for appellant.

Johnson, Paulantis, Lanphere & Monroe, Albuquerque, for Albuquerque Gravel Products Co.

Keleher & McLeod, Russell Moore, Albuquerque, for Home Planning Development Co.

**OPINION**

OMAN, Justice.

Insofar as pertinent to this appeal, plaintiff sought recovery from defendants of medical expenses and damages for personal injuries allegedly sustained by his minor daughter in a single automobile accident. The claim was based on alleged negligence of defendants, who pleaded contributory negligence as a defense. Plaintiff moved to strike this defense on the ground that contributory negligence is no longer a sufficient and valid defense to negligence on the part of a defendant, and urged that this defense be judicially replaced in New Mexico by the doctrine of comparative negligence.

The trial court denied the motions of plaintiff, but, pursuant to the provisions of § 21–10–3, N.M.S.A.1953 (Repl.Vol. 4, 1970, Supp.1973), recited in its order that it believed the order involved a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order might materially advance the ultimate termination of this litigation.

Plaintiff thereupon sought an order from the Court of Appeals allowing an interlocutory appeal from the order of the trial court as provided in § 21–10–3, supra. The Court of Appeals certified the case to this Court pursuant to § 16–7–14(C)(2), N.M.S.A.1953 (Repl.Vol. 4, 1970). We granted an interlocutory appeal. We affirm the order of the trial court denying plaintiff's motion to strike the defense of contributory negligence.

One of the questions presented is whether this Court or the Legislature should be the one to replace the doctrine of contributory negligence with some form of comparative negligence, if such replacement is to be accomplished in New Mexico. Plaintiff urges this Court to repudiate the doctrine of contributory negligence and replace it with the so-called pure form of comparative negligence. We do not decide whether this urged replacement should be accom-

plished by this Court or by the Legislature, since we decline to repudiate the doctrine of contributory negligence. We do, however, make the following observations concerning the history of the adoption and adherence to this doctrine and its replacement and attempted replacement in some jurisdictions by some form of the doctrine of comparative negligence.

Many commentators see the real birth of contributory negligence in Butterfield v. Forrester, 11 East 60, 103 Eng.Rep. 926 (1809), wherein it was stated by Lord Ellenborough: "A party is not to cast himself upon an obstruction which has been made by the fault of another, and avail himself of it, if he did not himself use common and ordinary caution to be in the right." .

There is, however, very respectable authority which traces the doctrine to a much earlier birth. 3 Holdsworth, History of English Law, 378–80 (1923); P. Winfield, A Textbook of the Law of Tort, 418 (5th ed. 1950); Hoffman v. Jones, 280 So.2d 431 (Fla.1973), dissent of Justice Roberts at 440–443 and authorities therein cited.

Regardless of the origin of the doctrine of contributory negligence, it was apparently first followed in the United States in the case of Smith v. Smith, 19 Mass. (2 Pick.) 621, 13 Am.Dec. 464 (1824). It rapidly became the dominant rule in all jurisdictions of the United States. E. Turk, Comparative Negligence on the March, 28 Chi.-Kent L.Rev. 189, 198 (June 1950).

There have been many attempts to have the courts in different jurisdictions denounce the doctrine of contributory negligence and adopt in its stead the doctrine of comparative negligence. Except for the majority decision of the Supreme Court of Florida in Hoffman v. Jones, supra, the courts in all other United States jurisdictions, which have considered this approach, have declined to follow these urgings, or have reversed themselves after having replaced contributory negligence with comparative negligence. Some of the court decisions from jurisdictions which have de-

clined to judicially discard contributory negligence for comparative negligence are found in Maki v. Frelk, 40 Ill.2d 193, 239 N.E.2d 445, 32 A.L.R.3d 452 (1968); Sun Oil Company v. Seamon, 349 Mich. 387, 84 N.W.2d 840 (1957); Krise v. Gillund, 184 N.W.2d 405 (N.D.1971); Peterson v. Culp, 255 Or. 269, 465 P.2d 876 (1970); Bridges v. Union Pacific Railroad Company, 26 Utah 2d 281, 488 P.2d 738 (1971).

Illinois judicially adopted comparative negligence in the case of Illinois Cent. R. Co. v. Hammer, 72 Ill. 347 (1874), but subsequently abandoned it. City of Lanark v. Dougherty, 153 Ill. 163, 38 N.E. 892 (1894); Lake Shore & M. S. Ry. Co. v. Hession, 150 Ill. 546, 37 N.E. 905 (1894). The Kansas Supreme Court also adopted comparative negligence in Wichita and W. R. Co. v. Davis, 37 Kan. 743, 16 P. 78 (1887). It was later repudiated by this same court in Chicago, K. & N. Ry. Co. v. Brown, 44 Kan. 384, 24 P. 497 (1890).

Georgia has judicially adopted a modified comparative negligence doctrine by resorting to a strained construction of a Georgia statute. W. Prosser, Handbook of the Law of Torts, § 67 (4th ed. 1971); Annot., 32 A.L.R.3d 463, § 7 at 478 (1970). Tennessee also has judicially adopted a rule which approaches comparative negligence and which is referred to as the rule of "remote contributory negligence." See Annot., 32 A.L.R.3d supra, § 7(b) at 479 and cases therein cited.

The arguments for replacing contributory negligence with comparative negligence have often been repeated. See for example, Hoffman v. Jones, supra; Maki v. Frelk, 85 Ill.App.2d 439, 229 N.E.2d 284 (1967), which was reversed by the Supreme Court of Illinois in Maki v. Frelk, supra; 2 F. Harper and F. James, The Law of Torts, § 22.1–22.3 (1956); W. Prosser, Handbook of the Law of Torts, supra; W. Prosser, Comparative Negligence, 51 Mich.L.Rev. 465 (1953).

In spite of the claimed greater capacity of comparative negligence to work justice in tort cases, our research shows that only

four states, to wit, Arkansas, Florida, Mississippi and Rhode Island have adopted comparative negligence in its pure form. Fourteen states, including Georgia, which is referred to above, have adopted modified forms of comparative negligence. Nebraska, South Dakota and Tennessee have adopted rules which to a limited extent embrace the basic concept of comparative negligence. All other states adhere to the doctrine of contributory negligence.

Comparative negligence has been adopted in Canada and England, but we note that this has resulted in the almost total abandonment in tort cases of the jury system, and especially so in complex, multi-party tort litigation wherein apportionment of damages on the basis of degrees of culpable negligence becomes extremely complex and involved. W. Prosser, Comparative Negligence, supra, at 504.

New Mexico has consistently adhered to the contributory negligence doctrine. Alexander v. Mining Co., 3 N.M. 255, 3 P. 735 (1884); Candelaria v. A., T. & S. F. R'y. Co., 6 N.M. 266, 27 P. 497 (1891); Morehead v. A., T. & S. F. Ry. Co., 27 N. M. 349, 201 P. 1048 (1921); Silva v. Waldie, 42 N.M. 514, 82 P.2d 282 (1938); Gray v. Esslinger, 46 N.M. 421, 130 P.2d 24 (Reh. denied, 46 N.M. 492, 131 P.2d 981 (1942); Moss v. Acuff, 57 N.M. 572, 260 P.2d 1108 (1953); Bryan v. Phillips, 70 N.M. 1, 369 P.2d 37 (1962); Jones v. Pollock, 72 N.M. 315, 383 P.2d 271 (1963); Perez v. Miller, 80 N.M. 213, 453 P.2d 383 (Ct.App.1969); N.M. U.J.I. (Civil), 13.1–13.8 (1966).

We fully appreciate that long adherence to a rule, or a particular construction thereof, does not in itself justify its continuation if change therein or abandonment thereof are demanded in order to accomplish justice. This Court has recognized the need for abandonment of or change in existing rules in the recent cases of State v. Gunzelman, 85 N.M. 295, 512 P.2d 55 (1973); Alexander v. Delgado, 84 N.M. 717, 507 P.2d 778 (1973); Stang v. Hertz Corporation, 83 N.M. 730, 497 P.2d 732 (1972); State ex rel. Reynolds v. Molybdenum Corp. of Amer., 83 N.M. 690, 496 P.2d 1086 (1972); Williamson v. Smith, 83 N.M. 336, 491 P.2d 1147 (1971). However, we are not inclined to change long established rules just for the sake of change, and we are particularly reluctant to abandon or change a long established rule with widespread ramifications in an area of substantive law, unless we can be reasonably sure that the change is very likely to improve the administration of justice. Ours is a dual responsibility of fashioning rules of law responsive to the accomplishment of justice in a changing society, while at the same time preserving established rules of law and the stability essential to the accomplishment of justice under law.

After careful consideration and weighing of the possible benefits to the administration of justice which might reasonably be expected from the adoption of comparative negligence as against the probable harm which might reasonably result from the abandonment of contributory negligence, we feel the better course to pursue is to retain our existing doctrine of contributory negligence. We fully appreciate this doctrine is not perfect, and particularly so in its abstract application. However, we are of the opinion that in the light of present realities this principle is more workable and at least equally as fair to litigants as is the doctrine of comparative negligence.

We do not believe that contributory negligence, as this doctrine has evolved in New Mexico, is nearly as harsh as has been imagined and urged by its critics and the proponents of comparative negligence. Pure contributory negligence has been overlayed with a number of statutory and common law doctrines which have in many cases tempered its claimed harsh application. We refer for example on the statutory side to the Workmen's Compensation Act, § 59-10-1, et seq., N.M.S.A.1953 (Repl.Vol. 9, pt. 1, 1960), and on the common law side to the doctrines of last clear chance and sudden emergency, as well as

to degrees of culpability and contributory culpability recognized in Gray v. Esslinger, supra, and N.M. U.J.I. (Civil) 13.8 (1966).

Further, we do not feel that the extreme examples often posed by critics of contributory negligence are consistent with reality. For instance, inconsistent with actualities in the application of the principles of negligence, contributory negligence and proximate causation to factual situations in litigated tort cases, are the often cited examples of a plaintiff being precluded from recovering any of his excessively great damages sustained in an accident to which his negligence contributed only 10% or less of the cause, while the defendant, whose negligence constituted 90% or more of the cause, escapes without damage. See in accord in this regard L. Powell, Contributory Negligence—A Necessary Check on the American Jury, 43 A.B.A.J. 1005 (November 1957).

Another reason for retaining contributory negligence is its ease of workability and application under our jury system. We observe that this same virtue is applicable to cases in which a judge or judges act as triers of the facts. Deciding whether negligent conduct constitutes a proximately contributing cause of an accident, or even deciding rough degrees of negligence, is one thing, but deciding precise percentages of negligence requires an expertise not found in most jurors or judges, if in fact it is possible for anyone to honestly and intelligently make such decisions. For example, how can anyone determine with any reasonable degree of precision the respective percentages of contributory negligence of two motorists involved in a collision of their vehicles, if the one runs a stop sign at high speed and the other drives on the wrong side of the highway while under the influence of intoxicants?

Even with an expert judge or jury, we entertain a grave suspicion that the application of comparative negligence to most, if not to all, tort situations, and a purported determination thereunder of the precise percentage of culpable negligence of each of the tortfeasors, amount to nothing more than a futile rationalization compelled by a basically irrational process of deciding percentages of negligence. If the attempt is not futile in most tort cases, it is at least inconsistent with any degree of reasonable certainty.

A further reason for our refusal to abandon our system of contributory negligence in New Mexico is suggested by the failure of the proponents of comparative negligence to show a clear superiority of their system over ours. Instead of positively outlining or defining the virtues or advantages of comparative negligence, they seem to content themselves largely with pointing out the shortcomings, or supposed shortcomings, of contributory negligence and demanding its replacement with some form—in the present case, the so-called pure form—of comparative negligence. An attempt, to fairly evaluate the relative merits and demerits of the two principles by one of the strong proponents of comparative negligence, demonstrates that great problems often arise in the application of comparative negligence to complicated negligence situations. See W. Prosser, Comparative Negligence, supra. Does comparative negligence help to balance or does it create even greater imbalance in our administration of the law of negligence? See L. Powell, Contributory Negligence—A Necessary Check on the American Jury, supra, at 1006.

Our Legislature in 1957, 1961, 1963 and 1969 considered proposed legislation to eliminate contributory negligence and to adopt in its stead comparative negligence. In each instance the Legislature was persuaded that the change should not be made.

The order of the trial court denying plaintiff's motion to strike the defense of contributory negligence should be affirmed.

It is so ordered.

MONTOYA and MARTINEZ, JJ., concur.

McMANUS, C. J., and STEPHENSON, J., dissent.